UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNIQUI BRADLEY,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>RACQUEL L. MCCARTER,<br><br>　　　　　　　　　　Defendant. | Case No. 2:20-cv-02077-KJD-NJK<br><br>ORDER |

Presently before the Court is Defendant's Motion for Summary Judgment (#24). Plaintiff responded in opposition (#29) to which Defendant replied (#30). Plaintiff also filed a Motion for Leave to File a Surreply in Support of Motion for Summary Judgment (#31) and Defendant responded in opposition (#32). Good cause being found, the Court grants Plaintiff's motion to file a surreply.

I.　　Factual and Procedural Background

Plaintiff, Uniqui Bradley ("Bradley") was an inmate in the custody of the Nevada Department of Corrections ("NDOC") at the Florence McClure Women's Correctional Center ("FMWCC") where she alleges her constitutional rights were violated. On June 25, 2020, Bradley was engaged in a verbal confrontation with another inmate. (#24-2, at 2). Defendant Racquel McCarter ("McCarter"), a correctional officer ("CO") at FMWCC, observed the confrontation, and ordered the two inmates to separate and walk in different directions. Id. McCarter ordered the unit to lock down and called for assistance via her radio. Id. After securing the other inmates, McCarter needed to escort Bradley out of the unit. Id. When McCarter grabbed Bradley's arm to begin the escort out of the unit, Bradley pulled her arm away and McCarter put Bradley's face down in a bed next to them to regain control and continue the escort. (#42-4). Another CO stood directly nearby, not engaging in the altercation. Id. The

incident on the bed lasted in total about thirteen seconds. Id. Another CO came by the bed and motioned McCarter away from Bradley. Id. McCarter then walked away, and Bradley was escorted by a different CO, in the opposite direction, away from the scene. Id.

Following the incident, on June 25, 2020, Bradley was seen by medical where she reported that an officer was on top of her and caused her injuries. (#26-2). The medical examination stated there was no medical deficit and no bruises and Bradley was returned to custody. Id. Bradley was seen again by medical on June 27, 2020. (#26-3). Bradley again described the occurrence, saying, "I got into a fight with officer days ago, now I have the aches and pain [sic]." Id. The medical report also stated that Bradley reported tenderness on the right side of her neck, but the report indicated no swelling, no bruising, and no skin breakdown, only superficial scratches that were 1 ½ inches in diameter. Id. The report stated Bradley should return to custody and that ibuprofen should be administered. Id. In response to Defendant's motion, Bradley provided two photos of slight bruising and asserts they are her neck and abdominal area. (#29-5). However, the date printed on the photographs is 01/16/2009. Id.

Bradley was issued a notice of charges following the incident with McCarter. (#24-2). She was charged with "Blocking/Threatening Staff." Id. At her first hearing on July 1, 2020, Bradley plead not guilty to the charges. Id. at 3. At another hearing on August 8, 2020, Bradley agreed to "plead guilty to MJ28 for disrupting the unit operations." Id. at 5.

On June 26, 2020, McCarter was working the segregation unit where Bradley was being held. (#24-3, at 13). McCarter was serving meals to the inmates and when Bradley saw McCarter, they exchanged words and McCarter asked another officer to give Bradley her meal. Id. at 13-14.

Bradley has brought two claims against McCarter, an Eighth Amendment Excessive Force claim and a First Amendment Retaliation claim. (#4).

II.     Analysis

**A. Legal Standard**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law. See FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 754, 773 (9th Cir. 2002); see FED. R. CIV. P. 56(e). "[U]nauthenticated documents cannot be considered in a motion for summary judgment." Id.

**B. Bradley's Motion for Summary Judgment**

McCarter argues she is entitled to summary judgment because as a matter of law, there is no genuine issue of material fact for a jury to consider. Regarding Bradley's Eighth Amendment claim, McCarter argues her use of spontaneous force was reasonable and necessary under the circumstances as a good-faith effort to maintain and restore discipline. (#24, at 8). Regarding Bradley's First Amendment claim, McCarter argues there is no evidence to support the allegation that McCarter retaliated against Bradley. Id. at 10.

Bradley contends that her constitutional rights were violated because of McCarter's excessive use of force and because of her retaliation against Bradley, and that there are genuine

1  disputed facts for a jury to consider. (#29).

2      a.   <u>Eighth Amendment Claim- Excessive Use of Force</u>

3  The Eighth Amendment protects individuals from the government imposing cruel and unusual punishment. U.S. CONST. amend. VIII. "After incarceration, only the 'unnecessary and wanton infliction of pain,' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Ingraham v. Wright</u>, 430 U.S. 651, 670 (1977) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). "[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992). "Despite the weight of these competing concerns, corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" <u>Id.</u> "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied on a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Id.</u>, <u>see</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 313 (1986). The Supreme Court has said that factors to be considered under the <u>Whitley</u> approach are (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat "reasonably perceived by the responsible officials;" and (5) "any efforts made to temper the severity of a forceful response," <u>Id.</u> at 7.

20      **i.**    **Extent of Bradley's injuries**

21  In this case, Bradley's injuries were minor or nonexistent. Bradley alleges she "experienced bruising, pain, and soreness" in her neck and abdominal areas." (#29-1, at 3). However, the medical examination of Bradley concluded that there was no medical deficit and no bruises. (#26-2, at 2). A follow-up examination found no swelling, bruising, or skin breakdown. (#26-3, at 2).

Bradley provided two photographs showing bruising, but the photographs are close-up, and it is hard to determine which part of the body the bruises are located. (#29-5, at 2-3). Further, the photographs are dated 01/15/2009, which is eleven years before the relevant incident took place.

1  Id. Bradley argued in her proposed surreply that the photographs were provided to Bradley by
2  McCarter in disclosures and therefore McCarter should know the origin of the photos and
3  relevant facts about them. (#31-1, at 4). Bradley also argues that she cannot explain why the
4  photos are dated 01/16/2009 which would put Bradley at 14 years old, when she could not have
5  been a Nevada state prisoner. Id. at 5. Bradley suggests there may have been a malfunction with
6  the dating system on the camera used by prison officials, and that Bradley explained in her
7  response that the photos were taken the day of the incident. Id.

8      The photos of the bruises do not meet the standard for admissibility. Without more
9  foundation laid and authentication for the photographs of the bruises, the Court cannot consider
10  them as an undisputed fact and evidence of injury.

11      **ii.    Need for Application of Force**

12      McCarter argues there was a need for spontaneous force and that need is demonstrated
13  through the video evidence. (#24, at 6). Both parties agree that Bradley was engaged in a verbal
14  altercation with another inmate and that McCarter came to address the situation. McCarter
15  walked over to the scene and ended up cuffing Bradley. The Court notes there is no audio, but
16  the video shows that McCarter cuffed Bradley's hands behind her back and as they both turned
17  to walk, Bradley jerked her arm. (#24-4). McCarter then shoved Bradley onto a nearby bunk and
18  pushed her head into the bunk. Id. The two of them grappled while Bradley's face was on the
19  bunk for about thirteen seconds. Id. Another CO watched close by, and another CO walked to the
20  situation where she gently pushed McCarter away from Bradley. Id. Bradley stood up, still
21  cuffed, and appeared to yell something at McCarter as McCarter walked away. Id.

22      Bradley argues there was no need for any force by McCarter and that Bradley was merely
23  reacting to McCarter calling her a "Hoe Bitch." (#29, at 12-13).

24      Prison officials must ensure order within the units they supervise. Resistance and defiance
25  can quickly escalate, and order must be swiftly restored by these officials. Bradley's physical
26  resistance to McCarter's escort was not conducive to an orderly and peaceful escort out of the
27  unit.
28

      **iii.**     **Relationship Between the Need for Force and Amount of Force Used**

The video shows that the layout of the prison unit is an open dormitory style, with bunks only feet apart from each other. (#24-4). Inmates are in close proximity to one another, and in such a space, verbal altercations could easily escalate into physical altercations. McCarter acted swiftly when Bradley pulled away from McCarter, and in an attempt to regain control of the situation, shoved Bradley down on a nearby bunk.

Bradley argues the force was unnecessary, only a reaction to name-calling, and that the amount of force used injured Bradley. (#29, at 13-14).

As explained above, there was a need to use force to regain control of the situation and the amount of force, although likely uncomfortable for Bradley, was not egregious and did not cause any injuries.

      **iv.**     **Threat Reasonably Perceived by Responsible Officials**

McCarter walked calmly but swiftly over to Bradley with handcuffs already out. (#24-4). She had called for assistance on her radio. (#29-4, at 3). She cuffed Bradley and was separating her from the other inmates when Bradley jerked away, and McCarter reacted by shoving her on a nearby bunk. (#24-4). CO's must make hasty decisions under pressure while balancing the safety of those around them and the safety of the prisoner. McCarter was removing Bradley from a situation that could have escalated from a verbal into a physical altercation with one or more inmates.

      **v.**     **Efforts Made to Temper Severity of Forceful Response**

McCarter shoved Bradley onto the bunk to regain control of her as she was attempting to escort her away from the other inmates. Another CO was nearby and watched the situation unfold, and seconds after the situation began, another CO came over and gently moved McCarter away from Bradley. The other CO finished the escort of Bradley and McCarter walked in the opposite direction.

      **vi.**     **Whitley Standard**

McCarter did use force against Bradley. The question is whether that use of force was applied as a good-faith effort to maintain or restore discipline, or if it was a malicious and

- 6 -

1  sadistic way to cause harm. See Whitley, 475 U.S. at 313. The use of force lasted about thirteen
2  seconds and consisted of Bradley being shoved down on a bunk with her hands cuffed behind her
3  after she was disrupting the prison unit. Bradley was not struck, kicked, or otherwise hit. Other
4  officers were nearby, and Bradley and McCarter were separated after the incident. McCarter was
5  attempting to deescalate the situation with the inmates when the situation then escalated into a
6  spontaneous use of force when Bradley jerked her arm away from McCarter. There is no doubt it
7  was an uncomfortable position for Bradley, but this does not rise to cruel and unusual
8  punishment and a violation of her Eighth Amendment rights.
9      The use of force was not egregious or outrageous and it was an act intended to restore
10 discipline to the unit. Bradley ended up pleading guilty to disrupting unit operations. Bradley
11 was also twice assessed through a medical evaluation and was found to have no injuries.
12     Overall, the undisputed facts make clear that McCarter did not submit Bradley to cruel and
13 unusual punishment. Even viewing the facts in light most favorable to Bradley, there is no
14 constitutional violation. As an inmate, Bradley is subjected to higher standards of order and
15 discipline to protect inmates and prison workers, and Bradley's experience did not cross the line
16 into Eighth Amendment territory. Further, without more foundation laid for the bruises shown in
17 the photographs, the Court cannot consider them. And even if proper foundation had been laid,
18 there is no evidence in the video or elsewhere that McCarter acted maliciously or sadistically to
19 cause Bradley pain. Therefore, McCarter's motion for summary judgment is granted on the
20 Eighth Amendment claim as a matter of law.
21     b.  <u>First Amendment Claim- Retaliation</u>
22     "Prisoners have a First Amendment right to file grievances against prison officials and to be
23 free from retaliation for doing so." <u>Watison v. Carter</u>, 68 F.3d 1108, 1114 (9th Cir. 2012). "A
24 viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a
25 state actor took some adverse action against an inmate (2) because of (3) that prisoner's
26 protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment
27 rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v.
28 Robinson</u>, 408 F.3d 559, 567-58 (9th Cir. 2005). "[B]ecause purely retaliatory actions taken

1  against a prisoner for having exercised those rights necessarily undermine those protections, such
2  actions violate the Constitution quite apart from any underlying misconduct they are designed to
3  shield." Id. at 567.
4      Bradley argues she was deprived of her First Amendment right to receive and file prison
5  grievances when McCarter refused to give Bradley a dinner tray in retaliation for Bradley
6  informing her that she intended to sue McCarter for her excessive force. (#4, at 6). McCarter
7  argues that she did not take any adverse action against Bradley and thus the claims against her
8  fail. (#24 at 11). McCarter argues that when she was working the unit where Bradley was being
9  held, Bradley continued to behave aggressively toward her so McCarter asked that another CO
10 provide Bradley with a meal. Id. at 11. McCarter asserts that ensuring another CO provide the
11 meal to Bradley was advancing a legitimate correctional goal because it was an attempt to
12 deescalate the situation. Id.
13     Bradley argues McCarter did retaliate against her after Bradley told McCarter she intended to
14 sue by stating "well, I guess you don't want your tray then" and skipped over giving Bradley her
15 tray. (#29, at 17).
16     The Court finds that Bradley has not adduced facts evidencing a viable claim of First
17 Amendment retaliation. Thus, her claim against McCarter fails as a matter of law and summary
18 judgment is granted in favor of McCarter. Even viewing all justifiable inferences in favor of
19 Bradley, McCarter's behavior is not retaliatory because it advanced a legitimate correctional
20 goal. Bradley and McCarter had engaged in an altercation the day before and in order to
21 deescalate any further confrontations, McCarter asked another CO to interact with Bradley and
22 distribute her meal. This was acceptable behavior by McCarter and Bradley has not presented
23 any evidence that she never received her meal tray.
24     III.    Conclusion
25     Accordingly, **IT IS HEREBY ORDERED** that Defendant McCarter's Motion for Summary
26 Judgment (#24) is **GRANTED;**
27     **IT IS FURTHER ORDERED** that Defendant's Motion to File Exhibits Under Seal (#25) is
28 **GRANTED;**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Surreply in Support of Motion for Summary Judgment (#31) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendant McCarter and against Plaintiff.

DATED this 2nd day of March 2023.

_____
Kent J. Dawson
United States District Judge